# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>JOHN THOMAS, et al.<br><br>Defendant(s). | Case No. 2:15-CR-62 JCM (CWH)<br><br>ORDER |

Presently before the court are Magistrate Judge Carl Hoffman's report and recommendation (doc. # 90) that this court deny defendant John Thomas III's ("Thomas") motions to suppress evidence derived from (i) the seizure of a firearm; (ii) statements Thomas made before his arrest; and (iii) seizure of Thomas' cellular phone. (Doc. ## 74, 75, and 78).[1] Defendant filed objections to Judge Hoffman's report and recommendation. (Doc. # 93). The United States filed a response to the objections. (Doc. # 94).

**I.   Background**

The superseding indictment charges Thomas with two crimes on two counts: (1) conspiracy to possess a controlled substance—marijuana—with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846 (count 1); and (2) use of a firearm resulting in death during and in relation to a crime of drug trafficking in violation of 18 U.S.C. §§ 2, 924(c)(1)(A), and 924(j) (count 2).

Thomas' three motions to suppress seek to preclude the government's use of all tangible evidence of the charges against him. He contends that his Fourth and Fifth Amendment rights were violated because (i) police seized a firearm from his Mercedes Benz vehicle without a warrant or

---

[1] The government filed a response in opposition to each motion to suppress. (Doc. ## 80, 81, and 83).

**James C. Mahan**
**U.S. District Judge**

his consent; (ii) police failed to advise him of his *Miranda*[2] rights when he was interrogated at the police station; and (iii) police seized his cellular phone without a warrant after he was interrogated. (*See* doc. ## 74, 75, and 78). The government responds that Thomas consented to the search that resulted in the seizure of the firearm, that he was not in custody during his interrogation, and that the cellular phone was seized incident to his arrest, and was later searched pursuant to a valid search warrant. (*See* doc. ## 80, 81, and 83).

Judge Hoffman conducted an evidentiary hearing on September 30, 2015. (*See m*ins. of proceedings, doc. # 86); (tr. of proceedings, doc # 89). Judge Hoffman found (i) that Thomas consented to seizure of the firearm in question and never revoked that consent; (ii) Thomas was not in custody during the interview at the police station; thus the statements he made there should not be suppressed; and (iii) the cellular phone was properly seized during Thomas' arrest after the interview.

Thomas now objects to those findings. (Doc. # 93). First, the defendant objects to Judge Hoffman's credibility findings with respect to the testimony elicited at the evidentiary hearing. (*Id.* at 3). He objects further to the magistrate judge's finding that he was not in custody during the police station interview. (*Id.* at 3–5). Finally, he contests Judge Hoffman's finding that seizure of his cellular phone incident to his arrest was proper. (*Id.* at 5).

**II.     Undisputed Facts**

*A. Seizure of the firearm*

Late in the evening of November, 30, 2013, North Las Vegas Police Department ("NLVPD") officers paid a visit to the home of John Thomas, Jr. ("Mr. Thomas"), defendant's father. The officers were investigating a homicide at an apartment on Cheyenne Avenue in Las Vegas, Nevada. During the investigation, police found evidence of pistol and shotgun use at the scene of the crime. Officers also located a Honda Accord vehicle near the apartment, which appeared to have been sprayed with shotgun pellets. That vehicle was registered to Mr. Thomas.

When the NLVPD officers arrived at his home, Mr. Thomas advised them he did indeed own the vehicle, but that it was primarily used by his son, the defendant in this matter. At the officer's request, Mr. Thomas contacted the younger Thomas and asked him to come to the home.

---

[2] *See Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

James C. Mahan
U.S. District Judge

- 2 -

Thomas arrived approximately twenty to thirty minutes later. At some point in the meantime, Mr. Thomas advised the officers that the younger Thomas owned a firearm.

Upon his arrival, officers asked Thomas if he owned a firearm. Thomas confirmed that he owned two firearms and informed the officers that one of them, a Glock 30, caliber .45, was in a Mercedes Benz vehicle he owned. The vehicle was parked in the driveway. Thomas showed the officers the car and indicated to them the location of the gun, which was in plain view.

Officer Gomez then asked Thomas for permission to search the car. After verbally consenting to the search, Thomas agreed to complete a written consent to search form. Out of an abundance of caution, Officer Gomez asked Thomas to make a handwritten statement. Thomas complied, signing a statement that reads, "out of my own free will, I give the North Las Vegas Police Department permission to take the Glock 30 from the car." At some time after that, criminal investigators from the NLVPD arrived and seized the firearm in question.

  B. *Thomas' statements during the interview at the police station*

After seizure of the firearm, Office Gomez asked Thomas if he would be willing to talk to someone at the police station. Thomas was told that he was not required to go and that he was free to leave. Thomas did go to the police station. He was interviewed there by Detective Mark Suranowitz. (*See generally* doc. # 81-1). Thomas was advised that the interview was voluntary, that he was free to leave at any time, and that the officers would take him home at his request. (*See* doc. # 81-1, lines 54–75).

Thomas and Detective Suranowitz discussed the events of the previous day for approximately one hour. During that interview, Thomas made potentially incriminating statements. At one point, he admitted that he had fired the Glock 30 described *supra* in the parking lot of the apartment complex where the alleged homicide occurred. (*See* doc. # 81-1, lines 408–50).

  C. *The cellular phone seizure*

After the interview with Detective Suranowitz, Thomas was arrested for unlawfully discharging a firearm in a public area. Suranowitz seized the cellular phone in question pursuant to that arrest.

**III. Legal Standards**

  A. *Objection to a magistrate judge's report and recommendation*

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B);

**James C. Mahan**
**U.S. District Judge**

- 3 -

LR IB 3-2.  Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made."  28 U.S.C. § 636(b)(1).  The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  *Id.*

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen days from the date of service of the findings and recommendations.  LR IB 3-2(a).  Similarly, Local Rule 7-2 provides that a party must file an opposition to a motion within fourteen days after service of the motion.  LR 7-2.

  B.  *Consent to a warrantless search*

Reasonableness is the foundation of Fourth Amendment jurisprudence. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (*citing Katz v. United States*, 389 U.S. 347, 360 (1967)). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id*. (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990)). Consensual searches are allowed because it is reasonable for law enforcement agents to conduct a search after receiving consent. *Id*. at 250-51. "A suspect is free, however, after initially giving consent, to delimit or withdraw his or her consent at anytime [sic]." *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006).

The government has the burden of demonstrating that consent to a warrantless search was voluntary. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997). Voluntariness is "'to be determined from the totality of all the circumstances.'" *Id*. (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). In the Ninth Circuit, district courts generally consider five factors in assessing voluntariness: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *United States v. Payayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2003). These factors "are only guideposts, not a mechanized formula to resolve the voluntariness inquiry." *Id*. at 502. "[I]t is not necessary for all five factors to be satisfied in order to sustain a consensual search." *United States v. Cormier*, 220 F.3d 1103, 1113 (9th Cir. 2000); *see also Patayan-Soriano*, 361 F.3d at 502 (reiterating that "[n]o one factor is determinative in the equation").

**James C. Mahan**
**U.S. District Judge**

- 4 -

### C. Miranda rights during a police interrogation

The obligation to administer *Miranda* warnings attaches once a person is subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). "Whether a suspect is in custody turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994).

The question is whether a "reasonable innocent person in such circumstances" would understand that he could refuse to answer officers' questions and leave. *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). Facts relevant to the determination of whether a person is in custody "include the language used by the officers, the physical characteristics of the place where the questioning occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt." *United States v. Hernandez*, 476 F.3d 791, 796 (9th Cir. 2007) (quotation omitted); *see also Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012) (setting forth a non-exhaustive list of factors that are pertinent to the determination whether a reasonable person would have believed he could freely walk away from the interrogators).

### D. Seizure incident to arrest

A police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area "within his immediate control." *Chimel v. California*, 395 U.S. 752, 763 (1969). Such a search is conducted for the twin purposes of finding weapons the arrestee might use or evidence the arrestee might conceal or destroy. *Preston v. United States*, 376 U.S. 364, 367 (1964). In the Ninth Circuit, the determination of the validity of search and seizure incident to arrest is a two-fold inquiry: (1) was the searched or seized item "within the arrestee's immediate control when he was arrested" and (2) did "events occurring after the arrest but before the search ma[k]e the search unreasonable?" *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1990).

**IV. Discussion**

Each of defendant's objections to Judge Hoffman's report and recommendation will be discussed in turn.

**James C. Mahan**
**U.S. District Judge**

- 5 -

### A. *Credibility findings regarding revocation of consent*

During the September 30, 2015, evidentiary hearing, Thomas admitted that he consented orally and in writing, as described above, to the search of his Mercedes vehicle and the seizure of the Glock 30 in question. He also testified, however, that he later revoked that consent. He contends that after signing the statement and the form, he told officers he needed a lawyer and that he did not want to consent to any search, but instead just wanted to make a statement. (Doc. # 90 at 4). All three NLVPD officers that were at the Thomas home testified that they were "with Thomas while waiting for the criminal investigators to arrive to conduct the search of the Mercedes and that at no time did Thomas withdraw his consent." (Doc. # 90 at 3).

Thomas does not object to Judge Hoffman's finding that "[b]ased on the totality of the circumstances and evidence presented, . . . Thomas voluntarily and without coercion consented to the search of the Mercedes and the seizure of the Glock 30, which was in plain view within the Mercedes." (Doc. # 90 at 6). Reviewing Judge Hoffman's findings and conclusion, this court agrees. Applying the *Pagayan* factors, Judge Hoffman found that: (1) Thomas was not in custody and did not reasonably believe he was in custody; (2) the officers never drew their service weapons; (3) the officer did not administer *Miranda* warnings; (4) the consent form Thomas signed indicated that he had the right to refuse consent to the search; and (5) Thomas was never told that a search warrant would be obtained if he refused to consent or that his refusal was futile. *See Pagayan*, 361 F.3d at 502; (doc. # 90 at 5–7).

In addition, Judge Hoffman found that, contrary to Thomas' arguments in his motion to suppress, he was not under stress from the shotgun wound he had suffered earlier that day or under the burden of immaturity at the time he gave consent. This court finds that those facts are supported by the record and therefore adopts Judge Hoffman's conclusion that consent to the search was voluntary and free of coercion.

The court must next determine whether Thomas revoked consent to the search prior to the criminal investigators seizing the firearm in question. *See McWeeney*, 454 F.3d at 1034. The magistrate judge observed that: "Thomas's testimony is in stark contrast with that of the three officers on the scene, each of whom testified that Thomas did not at any time revoke his consent. The [c]ourt therefore must make a credibility determination as to the evidence on this point." (Doc. # 90 at 7).

**James C. Mahan**
**U.S. District Judge**

- 6 -

Judge Hoffman then analyzed the testimony given by Thomas and the three NLVPD officers at the evidentiary hearing. Ultimately, he determined that the officers' testimony that consent was never revoked was more credible than Thomas' testimony that he did revoke his consent:

> Officers Gomez, Silva, and Wall each testified that they were present with Thomas while they waited for criminal investigators to arrive to seize the Glock 30, and the officers appeared to have clear recollections of the events that evening. Officer Gomez additionally testified that if Thomas had revoked his consent, he would have honored the withdrawal. Similarly, Officer Silva testified that if Thomas had withdrawn consent, they would simply have called for detectives to obtain a search warrant. Officer Gomez had been thorough in obtaining Thomas's consent because he was investigating a homicide and wanted to "solidify" the consent by obtaining multiple forms of consent, and testified that he would not have ignored a comment by Thomas that he revoked his consent. Thomas, on the other hand, has cause to fabricate his story because he is facing prosecution for serious offenses which turn on the admissibility of the Glock 30. Additionally, Thomas's claim that he was initially handcuffed when he arrived at the house was not credible, which detrimentally impacts this Court's view of his credibility. The Court therefore finds that Thomas's testimony is not credible, and that he did not revoke his consent.

(Doc. # 90 at 7).

Thomas now argues that the magistrate Judge "assum[ed] the defendant would testify falsely merely because he is accused of serious crimes." (Doc. # 93 at 3). As the text quoted above indicates, Judge Hoffman based his credibility determination on much more than that. (*See* Doc. # 90 at 7). First, all three officers' testimony was consistent. (*Id.*) Moreover, Officer Gomez testified credibly that due to the serious nature of the investigation, he took extra precaution in following proper procedure. (*Id.*) Officer Silva indicated that had consent been revoked, he would have called detectives to obtain a search warrant. (*Id.*) Finally, the determination was based in part on the fact that the magistrate judge had already found Thomas' testimony regarding handcuffing was not credible for similar reasons. (*Id.*)

Thomas argues further that courts in other circuits have found that it would be unreasonable for a man who maintains his innocence to be willing to let police search a car that he knew to contain inculpatory evidence. *See Higgins v. United States,* 93 U.S. App. D.C. 340, 341. The court will not upset a magistrate judge's credibility determination by substituting its own or any other court's subjective belief about the reasonableness of consenting to a given search for that magistrate judge's determination made after conducting an evidentiary hearing and a competent analysis of the testimony.

The court will adopt Judge Hoffman's determination that Thomas' testimony *was not* credible and that the NLVPD officers' testimony that he never revoked his voluntary consent *was*

James C. Mahan
U.S. District Judge

credible. Thomas did not revoke his consent. Accordingly, the Glock 30 firearm in question was seized based upon Thomas' voluntary consent, and it will not be suppressed. (Doc. # 90 at 7).

### B. The statements taken at the police station

Defendant objects to Judge Hoffman's finding that the interrogation was custodial. Thomas argues that any representations by the three NLVPD officers that the interrogation was voluntary and that Thomas could leave when he wanted to were illusory. He argues that the representations the officers made about the voluntary nature of the interview were designed to circumvent the defendant's *Miranda* rights and the officers always intended to arrest Thomas.

The defendant argues that his arrest subsequent to the interview distinguishes Thomas' interview from those in the cases cited by Judge Hoffman in the report and recommendation.[3] *See Oregon v. Mathiason*, 420 U.S. 492, 495 (1977) (finding that a defendant who voluntarily went to the police station, was immediately informed that he was not under arrest, and after the interview did in fact leave the station, was not in custody); *see also United States v. Crawford*, 372 F.3d 1048, 1059-60 (9th Cir. 2004) (en banc) (finding no custody when defendant agreed to go to the FBI office and was told that he was not under arrest).

The courts in those cases, however, held that "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Mathiason*, 420 U.S. at 495; *see also Crawford*, 372 F.3d at 1059. The focus of the inquiry in both cases was on whether the restrictions of freedom in place at the time of the interview amounted to custody. *See id.* In fact, in *Crawford*, the Ninth Circuit found that the defendant's interview with law enforcement was non-custodial *in spite of* finding that he had been illegally detained by officers earlier that day:

> [d]efendant concentrates on what happened at his home. He argues that, because he was detained during the parole search and officers had entered his bedroom with weapons drawn, his later questioning at the FBI office amounted to custodial interrogation. However, that detention ended when Defendant agreed to go to the FBI office. The "in custody" *1060 determination requires us to examine the "circumstances surrounding the *interrogation*," which did not occur in Defendant's home. *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (emphasis added). What took place in Defendant's home did not transform the later events at the FBI office into custodial interrogation.

*Crawford*, 372 F.3d at 1059–60.

---

[3] Thomas was arrested after the interview for discharge of a firearm in public based on his admission that he did so during the interview.

Similarly, Thomas arrest subsequent to the interview did not transform the prior events during the interview into a custodial interrogation. Defendants cite no case law that indicates that the district court should inquire into either the events that transpired after the interview *or* the subjective intent of the officers with respect to making an arrest in its inquiry regarding the custodial nature of an interview. Similarly, the court finds no such authority. The fact that Thomas was arrested after the interview for a crime he admitted to committing during the interview has no bearing on whether the interview was custodial in nature. The court will not speculate about the subjective mindset of the detectives and officers involved.

Judge Hoffman conducted a thorough review of the testimony related to the voluntary nature of the interrogation. He found that all three NLVPD officers testified that "Thomas voluntarily presented himself for a police interview after being told, and indicating that he understood, that he was not under arrest did not have to go to the police station, was free to leave at any time, and that officers would take him home." (Doc. # 90 at 10). Furthermore, when the interview commenced, Detective Suranowitz again told Thomas that he was free to leave at any time and the officers would take him home. (Doc. # 90 at 10); (*see* doc. # 81-1, lines 54–61).

To this point, defendant argues that he testified that he never actually believed he could leave, making the interview custodial. Here, Thomas' subjective belief about whether he could leave has no bearing. *See Booth,* 669 F.2d at 1235. The question is instead whether a "reasonable innocent person in such circumstances" would understand that she could refuse to answer officers' questions and leave. *Id.* The court finds that given the totality of the circumstances, a reasonable innocent person in those circumstances would understand that she was not under custody. Judge Hoffman's conclusion that defendant was not in custody during the interview will therefore be adopted in full. Thus, the statements Thomas made during the interview will not be suppressed.

C.   Seizure of the cellular phone

After conducting the appropriate inquiry under *Turner*, Judge Hoffman found that:

> the cellular telephone was on Thomas's person, and there were no intervening events to make the seizure unreasonable. Thomas makes no contrary argument. Nor does he argue that his arrest was illegal. The Court finds that the cellular telephone was seized from Thomas's person and there was probable cause to arrest him for unlawfully discharging a firearm in a public area.

(Doc. # 90 at 12); *see Turner*, 926 F.2d at 883.

**James C. Mahan**
**U.S. District Judge**

- 9 -

Defendant now argues that the search was *not* lawful. He argues that the seizure of the Glock 30 and the interrogation at the police station prior to the arrest were not lawful. (Doc. # 93 at 5). He argues that because the interrogation was unlawful, no probable cause to arrest defendant existed for the crime he admitted to committing during the interview existed. (*Id.*) The court has already found that the seizure of the Glock and the non-custodial interview at the police station were lawful. It therefore adopts Judge Hoffman's finding that there was probable cause for the arrest.

In the alternative, Thomas argues that the seizure of the cellular phone incident to arrest was inappropriate because the cellular phone is not a dangerous weapon. It is indisputable that the cellular phone was not a dangerous weapon. It is also indisputable, however, that the cellular phone contained evidence that Thomas might conceal or destroy. *See Preston*, 376 U.S. at 367. Seizure was therefore appropriate. *Id.*

Defendant does not contest the validity of the search warrant obtained to investigate the phone's contents. Having conducted a *de novo* review of Judge Hoffman's remaining findings with respect to the cellular phone seizure, the court finds good cause to adopt the findings in full. Accordingly, the court finds that the cellular phone was properly seized from Thomas incident to a lawful arrest, and the cellular phone evidence will not be suppressed.

**V.   Conclusion**

The court has reviewed defendant's objections to the report and recommendation, and conducted a *de novo* review of Judge Hoffman's report and recommendation. Having done so, the court finds good cause to adopt the report and recommendation in their entirety.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judge Hoffman's report and recommendation (doc. # 90) be, and the same hereby are, ADOPTED in their entirety.

IT IS FURTHER ORDERED that defendant John Thomas III's motion to suppress the seizure of a firearm (doc. # 74) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant John Thomas III's motion to suppress statements (doc. # 75) be, and the same hereby is, DENIED.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that defendant John Thomas III's motion to suppress the cellular phone and contents (doc. # 78) be, and the same hereby is, DENIED.

DATED February 5, 2016.

_____
UNITED STATES DISTRICT JUDGE